[No. G029719. Fourth Dist., Div. Three. Mar. 26, 2003.]

GENERAL REINSURANCE CORPORATION et al., Plaintiffs and Respondents, v.
ST. JUDE HOSPITAL, Defendant and Appellant.

COUNSEL

Roxborough, Pomerance & Nye, Nicholas P. Roxborough, Drew E. Pomerance and Daniel J. Yourist for Defendant and Appellant.

Barbanel, Treuer & Dantzler, Barbanel & Treuer, Alan H. Barbanel, Stephen D. Treuer and Stephen V. Kovarik for Plaintiffs and Respondents.

## OPINION

**O'LEARY, J.**—In this case an injured employee obtained a 10 percent increase in her workers' compensation award under Labor Code section 5814[1] because her self-insured employer unreasonably delayed or refused payment of benefits. The employer's excess insurance carrier obtained a judgment declaring it was not required to reimburse the employer for the 10 percent increase because the policy excluded indemnification for payments made in excess of "benefits regularly required by the Workers Compensation Law" if such benefits were required because "the Insured violated or failed to comply with any Workers Compensation Law." The employer contends the exclusion does not apply to section 5814 benefits and the exclusion is too ambiguous and overbroad to be enforceable. We disagree and affirm.

### FACTS AND PROCEDURE

*The Policy*

St. Jude Hospital self-insures for workers' compensation. General Reinsurance Corporation is St. Jude's excess insurance carrier. The General Reinsurance policy provides St. Jude indemnification for losses over $300,000 and defines a "loss" as "amounts actually paid by the Insured as a self-insurer under the Workers Compensation Law."

Section D of the General Reinsurance policy contains the following exclusion: "The Insurer will not indemnify the Insured for any payments made by the Insured in excess of benefits regularly required by the Workers Compensation Law[2] if such excess payments are required because: [¶] (1) of serious and willful misconduct of the Insured; [¶] (2) the Insured employed an employee in violation of law; [¶] (3) the Insured failed to comply with a health or safety law or regulation; [¶] (4) in violation of the Workers Compensation Law, the Insured discharged, coerced, or otherwise discriminated against any employee; or [¶] (5) the Insured violated or failed to comply with any Workers Compensation Law." The policy also provides "the Insurer has no duty to investigate, handle, settle or defend any claim, proceeding or suit against the Insured."

---

[1]All further statutory references are to the Labor Code unless otherwise indicated.

[2]The policy defines "Workers Compensation Law" as the law of the state or states listed on the declarations page, which in this case is California.

*The Ballard Action*

Pamela Limousin-Ballard (Ballard) was a St. Jude employee injured on the job in 1987. In 1992, Ballard and St. Jude stipulated to an award of workers' compensation benefits that contemplated payment of Ballard's future medical expenses.

In August 1994, Ballard filed a petition against St. Jude for penalties under section 5814. Apparently St. Jude's independent claims administrator, believing St. Jude was entitled to a credit for amounts Ballard had recovered from a third party, had unilaterally discontinued payment of all of Ballard's medical expenses without having first obtained authorization from the Workers' Compensation Appeals Board (WCAB).

In June 1997, a workers' compensation judge (WCJ) issued an opinion and issued findings and orders on Ballard's petition. In the opinion, the WCJ explained that while there are no statutes or regulations specifying how third party credits are to be pursued, decisional authority makes clear that WCAB intervention to establish the right to such credit must be had *before* benefits may be withheld from an injured employee. The WCJ found St. Jude had acted unreasonably in unilaterally withholding payment of Ballard's medical expenses. St. Jude compounded the problem when, after the WCAB found St. Jude was not entitled to the credit, it continued to refuse to pay Ballard's medical expenses while it pursued appellate remedies. And, even though the Supreme Court had denied St. Jude's petition for review of the earlier decision on the credits in March 1996, St. Jude continued to deny Ballard's medical expenses for over a year; it did not recommence paying her medical expenses until April of 1997. In the findings and order, the WCJ found St. Jude had unreasonably delayed payment of medical expenses and ordered it to pay Ballard an additional 10 percent of all her medical expenses. The WCAB affirmed the WCJ's order imposing the 10 percent penalty.

*The Declaratory Relief Action*

General Reinsurance filed this action seeking a declaration that it was not required to indemnify St. Jude for the additional amounts it is required to pay as penalties.[3] In addition to the petition discussed above, Ballard had filed several more petitions against St. Jude for penalties under section 5814 that were pending before the WCAB. As of the time of the bench trial, section 5814 penalties paid by St. Jude amounted to $78,892.

---

[3]Genesis Underwriting Management Company, which provides management services to General Reinsurance, was also a plaintiff in this action. The judgment declared Genesis has no reimbursement obligations because it was not a party to the insurance contract. St. Jude does not challenge this aspect of the judgment.

St. Jude presented testimony of its workers' compensation claims manager that in her experience section 5814 awards were very common and she "reasonably believed" they were covered by the General Reinsurance policy. The claims manager was not employed by St. Jude when the General Reinsurance policy was purchased.

St. Jude also presented expert testimony of a retired WCJ, who opined that a section 5814 award is considered to be part of "regular" workers' compensation benefits. He further opined a section 5814 award is remedial in nature (i.e., to compensate employee for delay in payment regardless of the reason for the delay), and not imposed to "punish" the employer (or its insurance company). The expert explained the WCAB had "non-statutory" rules of procedure for asserting a credit on an employee's third party recovery. He believed St. Jude had failed to follow those "non-statutory" rules in asserting its credit claim, but had not violated any workers' compensation laws.

The court ruled the policy exclusion for payments "in excess of benefits regularly required" made because "the Insured violated or failed to comply with any Workers Compensation Law" applied to the section 5814 penalties. The court rejected St. Jude's argument section 5814 penalties were simply part of the "normal" benefits awarded to Ballard and St. Jude could easily have avoided the penalty by continuing to pay Ballard's benefits while pursuing WCAB permission for the credit. St. Jude appeals.

## DISCUSSION

■ St. Jude argues the exclusion contained in section D5 of the General Reinsurance policy for "payments made by the Insured in excess of benefits regularly required by the Workers Compensation Law if such excess payments are required because . . . the Insured violated or failed to comply with any Workers Compensation Law," does not apply to an increase in a workers' compensation award made under section 5814. We disagree.

*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115 [90 Cal.Rptr.2d 647, 988 P.2d 568], aptly sets forth the law regarding construction of insurance policies. ■ " '[I]nterpretation of an insurance policy is a question of law.' [Citation.] 'While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply.' [Citation.] Thus, 'the mutual intention of the parties at the time the contract is formed governs interpretation.' [Citation.] If possible, we infer this intent solely from the written provisions of the insurance policy. [Citation.] If the policy language 'is clear and explicit, it governs.' [Citation.] [¶] When interpreting a policy provision, we must give its terms

their ' "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage." ' [Citation.] We must also interpret these terms 'in context' [citation], and give effect 'to every part' of the policy with 'each clause helping to interpret the other.' [Citations.] [¶] A policy provision is ambiguous *only* if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole. [Citation.] The court may then 'invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage.' [Citation.]"

■ Under these rules, the exclusion is not ambiguous. General Reinsurance is not obligated to indemnify St. Jude for payments made by St. Jude in excess of regular workers' compensation benefits required because St. Jude violated or failed to comply with the workers' compensation law. As we shall explain, the section 5814 award falls squarely into this exclusion, and St. Jude's strained efforts at creating ambiguity where none exists must fail.

### A. The section 5814 penalties fall within the exclusion.

At the core of St. Jude's argument is its conviction that a section 5814 award is simply a normal component of a workers' compensation award and that such an award cannot be construed as an "excess payment" or penalty imposed for violation of a workers' compensation law. It is wrong.

#### 1. The section 5814 penalties are payments in excess of regular benefits.

Section 5814 provides in pertinent part, "When payment of compensation has been *unreasonably delayed or refused,* either prior to or subsequent to the issuance of an award, the full amount of the order, decision, or award shall be increased by 10 percent." (Italics added.)

Countless Supreme Court and appellate court opinions have considered the nature of section 5814 awards. In *State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.* (1998) 18 Cal.4th 1209 [77 Cal.Rptr.2d 528, 959 P.2d 1204], the Supreme Court described section 5814 as the harsher in a "triad of penalties" available to a claimant when payment is delayed (18 Cal.4th at p. 1214, fn. 3); one that is justified only because the specific finding is made that the employer (or insurer) acted *unreasonably. (Ibid.)*

■ "The purpose of the section 5814 penalty is twofold. First, the statute provides an incentive to employers and insurance carriers to pay benefits

promptly by making delays costly. [Citations.] A second and ' "equally important purpose" ' is ' "to encourage timely payments of compensation to injured working people to promptly ameliorate economic hardship [resulting from] the interruption of their employment and concomitant loss of income." ' [Citations.] The touchstone of a section 5814 *penalty* is a delay or refusal to pay benefits that is *unreasonable*." (*State Comp. Ins. Fund v. Workers' Comp. Appeals Bd., supra,* 18 Cal.4th at p. 1214, italics added; see also *Avalon Bay Foods v. Workers' Comp. Appeals Bd.* (1998) 18 Cal.4th 1165, 1170-1171 [77 Cal.Rptr.2d 552, 959 P.2d 1228]; *DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 395-396 [20 Cal.Rptr.2d 523, 853 P.2d 978]; *Gallamore v. Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 815, 822 [153 Cal.Rptr. 590, 591 P.2d 1242]; *Adams v. Workers' Comp. Appeals Bd.* (1976) 18 Cal.3d 226, 229 [133 Cal.Rptr. 517, 555 P.2d 303].)

St. Jude's suggestion that any innocuous behavior (i.e., not meriting punishment) might trigger section 5814 penalties if any delay in payment results is unfounded. A minor delay or failure to pay a de minimis amount might trigger section 5814 if the WCAB finds the employer acted unreasonably. (*Avalon Bay Foods v. Workers' Comp. Appeals Bd., supra,* 18 Cal.4th at p. 1171 ["section 5814 does not recognize any exception for de minimis delinquencies in determining whether to assess a penalty"].) But as noted in *County of Sacramento v. Workers' Comp. Appeals Bd.* (1999) 69 Cal.App.4th 726 [81 Cal.Rptr.2d 780], mere inadvertence alone does not support a section 5814 penalty. "Section 4650 provides for a 10 percent penalty on any payment which is delayed, regardless of the reason. However, where the delay is 'unreasonable,' section 5814 prescribes a penalty of 10 percent on the entire award. In our view, before the more drastic remedy of section 5814 may be invoked, there must be something more than mere inadvertence . . . ." (*County of Sacramento,* at p. 733.)

St. Jude's argument that because section 5814 penalties are considered to attach to and become part of a compensation award, they cannot be payments in excess of regular benefits is not well taken. We are aware that although typically described as a "penalty," once ordered, the section 5814 penalty is "properly characterized as part and parcel of the original compensation award. It is an increase in compensation awarded, rather than a separate type of benefit." (*Anderson v. Workers' Comp. Appeals Bd.* (1981) 116 Cal.App.3d 954, 960 [172 Cal.Rptr. 398].) But that begs the issue—even if the penalty attaches to the underlying award, is it a payment in excess of the amount regularly required?

St. Jude's reliance upon the WCAB's opinion in *Hershman v. James Eisenberg Medical Group* (2002) 67 Cal.Comp.Cases 808 for the proposition

that section 5814 penalties are regular workers' compensation benefits is misplaced. In *Hershman,* the workers' compensation liability insurance carrier unreasonably delayed payment of the injured worker's claim and the insurer was ordered to pay section 5814 penalties. The insurer subsequently became insolvent and the issue was whether the California Insurance Guarantee Association (CIGA), the entity statutorily mandated to discharge "covered claims" of insolvent insurers (Ins. Code, § 1063.2, subd. (a)), was responsible for payment of the section 5814 penalties to the injured worker. CIGA argued it was not because Insurance Code section 1063.1, subdivision (c)(8) excluded from the definition of "[c]overed claims . . . any amount awarded as punitive or exemplary damages." The WCAB disagreed. Following the reasoning contained in dicta in *Carver v. Workers' Comp. Appeals Bd.* (1990) 217 Cal.App.3d 1539, 1549 [266 Cal.Rptr. 718], the WCAB held "section 5814 *penalties*" are not punitive or exemplary damages, but result in an increase in the compensation award. Because they are part of "compensation," CIGA was required to pay the section 5814 penalties under Insurance Code section 1063.1, subdivision (c)(1)(vi), which required it " 'to provide workers' compensation benefits under the workers' compensation law of this state[.]' " (*Hershman v. James Eisenberg Medical Group, supra,* 67 Cal.Comp.Cases at p. 811, italics omitted.)

Neither *Hershman v. James Eisenberg Medical Group, supra,* 67 Cal.Comp.Cases 808 nor *Carver v. Workers' Comp. Appeals Bd., supra,* 217 Cal.App.3d 1539 considered the issue presented here. Both cases were decided in the context of workers' compensation *liability* insurance, not a self-insured employer's excess indemnification policy. Both considered whether a specific statutory exclusion of "exemplary or punitive damages" included section 5814 penalties. Neither case considered whether a section 5814 penalty was a payment in excess of regularly required benefits. More importantly, neither considered whether an excess insurance carrier could legally exclude such penalties from its indemnification coverage. We conclude the section 5814 penalties are not regularly required workers' compensation benefits, but are excess payments within the plain meaning of the policy's exclusion.

   *2.   The section 5814 penalty was imposed for violation or failure to comply with workers' compensation laws.*

St. Jude argues that even if construed as a penalty, or a payment in excess of regular workers' compensation benefits, section 5814 penalties generally, and the award in this case, are not necessarily imposed because of the violation of, or failure to follow, any workers' compensation law. Again, we disagree.

The WCAB found St. Jude had *unreasonably* withheld payment of Ballard's workers' compensation benefits. That decision is final and we will not now revisit the contention St. Jude raised in the Ballard action—that it acted reasonably in withholding payment of her benefits.

In unreasonably withholding, delaying or denying payment of Ballard's medical expenses, St. Jude clearly ran afoul of several workers' compensation laws. For example, under section 4600, St. Jude had the affirmative statutory duty to provide Ballard medical treatment, of which it could not be relieved without good cause. (*Henson v. Workmen's Comp. Appeals Bd.* (1972) 27 Cal.App.3d 452, 457 [103 Cal.Rptr. 785].) Section 4550 requires the employer pay workers' compensation benefits ("Where liability for compensation exists under this division, such compensation shall be furnished or paid by the employer . . . ."). The version of section 4603.2 in effect at the relevant times required an employer to pay physician's bills "after receipt of the required reports." (Stats. 1984, ch. 909, § 2, p. 3033.) (The current version of that statute requires payment within 60 days of receipt of itemized bills along with required reports.) California Code of Regulations, title 8, section 10109, subdivision (e) imposes upon "[I]nsurers, self-insured employers and third-party administrators" the duty to "deal fairly and in good faith with all claimants, including lien claimants." In short, the workers' compensation law requires payment of benefits to an injured worker. Refusing to pay those benefits was a violation of the workers' compensation laws.

St. Jude largely complains about the lack of a specific statute directing how it is to claim credit against its liability for compensation for Ballard's recovery from a third party. It argues at worst it violated a "non-statutory rule of procedure," which cannot be construed a violation of any workers' compensation law. ▮▮▮ ▬ ▮▮ ▮▮ Accordingly, it argues, since no specific statute was violated by St. Jude's method of asserting its claim, the award of section 5814 penalties was not for a violation of any workers' compensation law.[4] But the argument is irrelevant. The WCAB has decided in the Ballard action that St. Jude's withholding payment was not permitted and unreasonable. We cannot reconsider that point. It was St. Jude's refusal to pay Ballard's benefits that constituted a violation of (or failure to comply with) workers' compensation law.

---

[4]Section 3861 specifically provides the WCAB may allow such a credit—"The appeals board is empowered to and shall allow, as a credit to the employer to be applied against his liability for compensation, such amount of any recovery by the employee for his injury . . . ." The statute does not authorize an employer to make a unilateral decision that a credit is appropriate and withhold benefits.

B.  *The exclusion is not ambiguous.*

St. Jude's reliance on *Safeco Ins. Co. v. Robert S.* (2001) 26 Cal.4th 758 [110 Cal.Rptr.2d 844, 28 P.3d 889] (*Safeco*), to establish an ambiguity rendering the General Reinsurance exclusion unenforceable is misplaced. In *Safeco*, a homeowners liability insurance policy expressly covered accidental bodily injury but excluded coverage for bodily injury arising out of an "illegal act." The insureds' son accidentally shot and killed his friend and was subsequently found guilty in the juvenile court of involuntary manslaughter. The insurer sought a declaration that the "illegal act" exclusion precluded coverage for the ensuing wrongful death action against the insureds. (*Id.* at p. 761.)

The Supreme Court concluded the "illegal act" exclusion at issue in *Safeco* was unenforceable. (*Safeco, supra,* 26 Cal.4th at p. 766.) The phrase "illegal act" could reasonably be construed either broadly to mean an act prohibited by any law, whether civil or criminal, or more narrowly, to imply a violation of criminal law only. If read broadly the exclusion could include even simple acts of negligence, because a violation of the duty to use care is a violation of law. (*Id.* at p. 764.) Under such a broad interpretation, the promise of the insurance would be rendered illusory—the policy was supposed to defend and indemnify for injury resulting from negligence, but the exclusion could defeat that coverage. (*Id.* at p. 765.) "[R]easonable insureds [would] expect their homeowners policy to protect them against liability for accidental injury or death occurring in their home[.]" (*Id.* at p. 766.) Therefore, the Supreme Court concluded the exclusion was inherently ambiguous and incapable of being given any enforceable meaning. (*Id.* at p. 767.)

St. Jude would have us read *Safeco* so broadly as to stand for the proposition that any exclusion tied in any way to a violation of any law is unenforceable. That is not *Safeco*'s holding. *Safeco* held the "illegal act" exclusion was unenforceable because it was not clear as to what law it was referring to, criminal or civil, and could be broadly interpreted to obliterate the very coverage it promised. "The ' "burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language." ' [Citation.]" (*Safeco, supra,* 26 Cal.4th at p. 766.) Indeed, subsequent cases have noted, "The corollary of the *Safeco* rule is that where . . . an insurer does want to exclude criminal acts from coverage and has expressly done so in language that is clear and unambiguous, the exclusion will be given effect." (*20th Century Ins. Co. v. Schurtz* (2001) 92 Cal.App.4th 1188, 1189, 1195-1196 [112 Cal.Rptr.2d 547], italics omitted [clause excluding coverage for " 'bodily injury . . . which is a foreseeable result of an intentional or criminal act of [the] insured or which is in fact intended by [the] insured' " is enforceable].)

The exclusion at issue here bears little similarity to the one at issue in *Safeco*. Unlike the *Safeco* exclusion, this one does not cover a broad range of "illegal acts." The exclusion is quite specific. It covers payments in excess of regular workers' compensation benefits if required because "the Insured violated or failed to comply with any Workers Compensation Law." The penalty imposed for St. Jude's unreasonable refusal to pay benefits clearly falls within the exclusion.

There is no possibility the exclusion could be interpreted to preclude indemnification for regular workers' compensation benefits, i.e., render the coverage illusory as St. Jude suggests. We engage in a reasonable construction of the policy, not a strained construction. (*Gunderson v. Fire Ins. Exchange* (1995) 37 Cal.App.4th 1106, 1118 [44 Cal.Rptr.2d 272].) The examples given by St. Jude are not compelling. It cites section 5402, subdivision (b), which provides that if a claim is not rejected within 90 days, the injury is presumed to be compensable. It also states that under certain procedural rules, which are not cited, an employer's affirmative defenses can be waived if not listed in its mandatory settlement conference statement. St. Jude argues that when benefits are awarded due to a violation of either of these rules, the policy exclusion would apply and all benefits could be excluded from coverage. But those are not *reasonable* interpretations. Both of those scenarios deal with an employer's or insurer's ability to defend against liability for regular workers' compensation benefits. The exclusion at issue here cannot deprive the insured of indemnification for regular benefits, only benefits in excess of regular benefits. There is no ambiguity in the exclusion.

C.  *St. Jude's remaining contentions are without merit.*

St. Jude's other arguments as to why the exclusion is unenforceable are likewise without merit.

First, St. Jude argues its presented uncontroverted evidence that it reasonably believed the excess policy would include coverage for section 5814 penalties. It relies on the testimony of its workers' compensation claims manager that she "reasonably believed" the penalties to be covered. ██ But the insured's expectations are considered only when the policy is ambiguous (*La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 37 [36 Cal.Rptr.2d 100, 884 P.2d 1048]); they cannot be relied upon to create an ambiguity where none exists.

St. Jude next points out the other four exclusions contained in paragraph D of the General Reinsurance policy relate to specific workers' compensation

laws that prohibit certain conduct. Paragraphs D1 and D3 exclude indemnification for excess payments required because of serious and willful misconduct of the insured and violation of a health or safety law or regulation; section 4553 requires an award be increased by one-half if injury is due to the employer's serious or willful misconduct, which can include violation of a safety order (§ 4553.1). Paragraph D2 excludes excess payments because the insured employed an employee in violation of law; section 4557 requires a 50 percent increase in an award to an illegally employed minor under age 16. Paragraph D4 excludes indemnification for excess payments required because of illegal discrimination; section 132a provides for significant increases in awards due to discrimination.

But, St. Jude argues, exclusion D5 is not similarly tied to a specific Labor Code section. Rather, it is more of a catchall that applies to any violation or failure to comply with workers' compensation laws. Thus, it urges, it is unclear whether it was intended to apply to section 5814 penalties and an insured is not adequately put on notice that paragraph D5 includes section 5814 penalties. ■ The fact that paragraph D5 is a catchall and is broader than the other exclusions, does not render it ambiguous.

■ Finally, St. Jude argues the exclusion violates state law and public policy because it leaves the employer uninsured for the portion of benefits attributable to section 5814 penalties. The argument ignores that St. Jude is *self-insured.* An employer is required by law to "secure payment of [workers'] compensation" either by being insured against liability or by obtaining a certificate of self-insurance. (§ 3700.) St. Jude chose the latter route. That its *excess* insurance carrier excludes indemnification for certain benefits does not create a gap in coverage exposing the injured worker to the risk of being unable to recover her benefits—coverage is had through St. Jude's being self-insured. The only risk is to St. Jude as to how much it can minimize its losses for benefits it is required to pay.

The judgment is affirmed. The respondents are awarded their costs on appeal.

Sills, P. J., and Fybel, J., concurred.