[No. B215470. Second Dist., Div. Five. June 17, 2010.]

LAUREN N. HERVEY, Plaintiff and Appellant, v.
MERCURY CASUALTY COMPANY, Defendant and Respondent.

## Counsel

Gianelli & Morris, Robert S. Gianelli, Richard Fruto; Esner, Chang & Ellis, Stuart B. Esner, Andrew N. Chang and Holly N. Boyer for Plaintiff and Appellant.

Barger & Wolen, Steven H. Weinstein, Spencer Y. Kook and James C. Castle for Defendant and Respondent.

OPINION

MOSK, J.—

## INTRODUCTION

Plaintiff and appellant Lauren N. Hervey (Hervey) purchased an automobile insurance policy from defendant and respondent Mercury Casualty Company (Mercury). Hervey alleges Mercury breached the policy by offsetting uninsured motorist payments due her for injuries suffered in an automobile accident with the amount Mercury paid Hervey under the medical expense coverage in the same policy for the same accident. According to Hervey, Mercury took the offset notwithstanding the title of the medical expense coverage endorsement: "MEDICAL EXPENSE—NO EXCESS, NO REIMBURSEMENT." The operative terms of that endorsement deleted only the medical expense payments offset or reimbursement provisions from liability recoveries from those responsible for the accident. The medical expense endorsement did not delete the offset or reimbursement provision contained in the uninsured motorist section of the policy, the provision upon which Mercury relied for its right of offset for medical expense payments made by Mercury. We hold that the trial court properly sustained without leave to amend Mercury's demurrer to Hervey's class action complaint because the policy was not reasonably susceptible to Hervey's interpretation of it.

## BACKGROUND

As this appeal arises from an order sustaining a demurrer without leave to amend, the facts are taken from those alleged in the complaint and those judicially noticed.

Hervey purchased from Mercury automobile insurance that included medical expense coverage. The medical expense endorsement contains, inter alia, the following language: "This endorsement forms part of the policy shown below, all other terms and conditions of this policy remain unchanged . . . . MEDICAL EXPENSE—NO EXCESS, NO REIMBURSEMENT. Condition 3 of Part II and Exclusion (J), Part II are hereby deleted from the policy." The policy declaration page specifies $5,000 medical expense coverage, and the box entitled "No Excess No Reimbursement" is checked.

The provision deleted by the medical expense endorsement in part II ("EXPENSES FOR MEDICAL SERVICES-CONDITIONS"), condition 3 of the policy, provides in part, "Reimbursement Agreement—Offset Provisions: If payment is made under this coverage [(expenses for medical services)], to or

on behalf of any person, such person agrees to reimburse the company to the extent of such payment from the proceeds of (a): any settlement or judgment that may result from the exercise of any rights of recovery of such person against any party that such person claims is responsible for bodily injury to the person for which payment under medical expense coverage has been made. (b) any payment received or to be received by or on behalf of an injured person under the provisions of any (1) automobile or premises insurance affording benefits for medical expenses, (2) individual blanket or group accident, disability or hospitalization insurance, (3) medical, surgical, hospital or funeral service, benefits or reimbursement plan, (4) workers' compensation or disability benefits law or any similar law."

The medical expense endorsement also deleted exclusion (J) of part II, which excludes from coverage "expenses payable under this part, if the expenses are paid, payable or eligible for payment under the terms and conditions of any (1) automobile or premises insurance affording benefits for medical expenses, (2) individual, blanket, or group accident, disability or hospitalization insurance, (3) medical or surgical reimbursement plan, (4) non-profit association or corporation plan providing hospital, surgical, medical or similar benefits to participants, enrollees or members. No payment shall be made, under this part until claim for the expenses incurred shall have been first submitted to the benefit providers listed in (1) thru (4) above, and such providers have paid their limit of payment or furnished their applicable limit of service and the insured furnishes a written statement from the provider(s) as proof. No payment shall be made, under this part for medical expenses incurred which the insured is not required to pay."

Focusing on the exclusions in the medical expense endorsement, the parties dispute the continuing applicability of part IV ("UNINSURED MOTORISTS COVERAGE—UNDERINSURED MOTORISTS COVERAGE"), condition 4(c), which states, "If the insured has valid and collectible automobile medical payment insurance available to him or her, the damages which the insured shall be entitled to recover from the owner or operator of the uninsured motor vehicle shall be reduced for purposes of uninsured motorist coverage by the amounts paid or due to be paid under the automobile medical payment insurance."

Hervey was involved in an automobile accident caused by an uninsured driver. Hervey claimed under the medical expense coverage, and Mercury paid, medical expenses she incurred as a result of the injuries she received in the accident. Thereafter, Hervey claimed amounts under the uninsured motorist section of her policy for the injuries she suffered as a result of the same accident caused by the uninsured driver. Mercury agreed to settle the uninsured motorist claim, but took the position that it would offset against

any amount payable for uninsured motorist coverage the amount it paid Hervey under the medical expense coverage.

Hervey's complaint is on her own behalf and on behalf of a class composed of all similarly situated insureds who had medical coverage under a Mercury automobile policy. Hervey alleged claims for breach of contract, declaratory relief, and a violation of Business and Professions Code section 17200 et seq.—the unfair competition law. Mercury demurred and moved to strike the complaint. Mercury also requested judicial notice of the specimen policy and endorsement issued to Hervey, to which request Hervey objected. Hervey, in opposition to Mercury's demurrer and motion, requested judicial notice of her demand for inspection and Mercury's response, which response included Mercury's specimen insurance policy and endorsement. The trial court denied Mercury's request for judicial notice, but granted Hervey's request. The trial court then sustained Mercury's demurrer without leave to amend, deemed the motion to strike moot, and ruled that each side was to bear her or its own costs and attorney fees. Thereafter, the trial court entered judgment in favor of Mercury, and Hervey timely filed a notice of appeal.

## DISCUSSION

### A. *Standard of Review*

The standard of review on appeal following the sustaining of a demurrer is de novo. (*Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 122 [61 Cal.Rptr.3d 221].) "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; see also *Randi W. v. Muroc Joint Unified School Dist.* (1997) 14 Cal.4th 1066, 1075 [60 Cal.Rptr.2d 263, 929 P.2d 582].)

When a demurrer is sustained without leave to amend, the reviewing court must determine whether there is a reasonable probability that the complaint could have been amended to cure the defect. A determination by the reviewing court that there is such a reasonable probability results in the conclusion that the trial court abused its discretion by denying leave to amend. (*Williams v. Housing Authority of Los Angeles* (2004) 121 Cal.App.4th 708, 719 [17 Cal.Rptr.3d 374].) The plaintiff bears the burden of establishing

that the complaint could have been amended to cure the defect. (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320 [25 Cal.Rptr.3d 320, 106 P.3d 976].)

### B. *Interpretation of Insurance Policy*

■ Ordinary rules of contract interpretation apply to insurance policies. (See *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821–822 [274 Cal.Rptr. 820, 799 P.2d 1253].) "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. [Citation.] Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' [citation], controls judicial interpretation. [Citation.] Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning. [Citations.] [¶] . . . ■ In the insurance context, we generally resolve ambiguities in favor of coverage. [Citations.] Similarly, we generally interpret the coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured. [Citations.] These rules stem from the fact that the insurer typically drafts policy language, leaving the insured little or no meaningful opportunity or ability to bargain for modifications. [Citations.] Because the insurer writes the policy, it is held 'responsible' for ambiguous policy language, which is therefore construed in favor of coverage." (*Ibid.*, fn. omitted; see *Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390 [33 Cal.Rptr.3d 562, 118 P.3d 589] [" ' "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." ' "].)

■ Parol evidence is admissible to interpret an insurance policy if " 'relevant to prove a meaning to which the language of the instrument is reasonably susceptible.' " (*Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 435 [204 Cal.Rptr. 435, 682 P.2d 1100].) Although parol evidence may be admissible to determine whether the terms of a contract are ambiguous (see *Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 391 [46 Cal.Rptr.3d 668, 139 P.3d 56]), it is not admissible if it contradicts a clear and explicit policy provision (see *Supervalu, Inc. v. Wexford Underwriting Managers, Inc.* (2009) 175 Cal.App.4th 64, 72–73 [96 Cal.Rptr.3d 316] (*Supervalu*)). "To the extent [the rules of contract interpretation] involve parol evidence, the evidence is admissible as follows: 'The determination whether to admit parol evidence involves a two-step process. "First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the

language is 'reasonably susceptible' to the interpretation urged by a party. If in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid the second step—interpreting the contract." ' (*General Motors Corp. v. Superior Court* (1993) 12 Cal.App.4th 435, 441 [15 Cal.Rptr.2d 622] . . . .)" (*Supervalu, supra*, 175 Cal.App.4th at p. 73, fn. omitted.)

■ "The admission of extrinsic evidence to interpret a written document is explained in *Winet v. Price*, 4 Cal.App.4th 1159, 1165–1166, 6 Cal.Rptr.2d 554 (4th Dist. 1992), as follows: '[P]arol evidence is properly admitted to construe a written instrument when its language is ambiguous. The test of whether parol evidence is admissible to construe an ambiguity is not whether the language appears to the court unambiguous, but whether the evidence presented is relevant to prove a meaning to which the language is "reasonably susceptible." [Citation.]' [¶] The application of this principle would preclude a court from granting a demurrer based on a written document that is attached to and incorporated into a complaint by reference. Also, it appears inconsistent with the general rule that the interpretation of a document is a question of law to be decided by the court when it is not ambiguous and there is no extrinsic evidence. These two principles are reconciled by reference to the terms of a complaint. When the complaint fails to allege that the terms of the contract have any special meaning, the court can construe the language of the document on its face to determine whether as a matter of law the contract is reasonably subject to a construction sufficient to sustain a cause of action in response to a demurrer. However, when the plaintiff alleges a meaning to the document that is reasonable in light of its terms, the court cannot grant a demurrer but must permit the admission of extrinsic evidence regarding the meaning of the document as intended by the parties." (1 Miller & Starr, Cal. Real Estate (3d ed. 2003) Contracts, § 1:60, com., pp. 163–164, fn. omitted; compare *Trident Center v. Connecticut General Life Ins. Co.* (9th Cir. 1988) 847 F.2d 564, 569–570 [Cal. essentially has no parol evidence rule] with *Banco Do Brasil v. Latian* (1991) 234 Cal.App.3d 973, 1011, fn. 53 [285 Cal.Rptr. 870] and Martin-Davidson, *Yes, Judge Kozinski, There* Is *a Parol Evidence Rule in California—The Lessons of a Pyrrhic Victory* (1995) 25 Sw.U. L.Rev. 1.) ■ It has also been held that when a party attaches a contract to a complaint and alleges its interpretation of the contract, the failure to plead what extrinsic evidence will be offered does not waive or forfeit any right to introduce such evidence. (See *Southern Pacific Land Co. v. Westlake Farms, Inc.* (1987) 188 Cal.App.3d 807, 817 [233 Cal.Rptr. 794]; see also *Hayter Trucking, Inc. v. Shell Western E&P, Inc.* (1993) 18 Cal.App.4th 1, 17 [22 Cal.Rptr.2d 229].)

■ When the facts are undisputed, as they are deemed to be on a ruling on a demurrer, the interpretation of a contract, including whether an insurance policy is ambiguous or whether an exclusion or limitation is sufficiently

conspicuous, plain, and clear, is a question of law. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619]; *Fire Ins. Exchange v. Superior Court* (2004) 116 Cal.App.4th 446, 453 [10 Cal.Rptr.3d 617]; *United Services Automobile Assn. v. Baggett* (1989) 209 Cal.App.3d 1387, 1397 [258 Cal.Rptr. 52] [ambiguity issue of law]; Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2009) ¶ 4:491, p. 4-69 (rev. # 1, 2009) [whether exclusion or limitation is " 'conspicuous, plain and clear' " question of law].)

### C. Judicial Notice

The trial court denied Mercury's request for judicial notice of the policy in issue. (See *Pastoria v. Nationwide Ins.* (2003) 112 Cal.App.4th 1490, 1495, fn. 4 [6 Cal.Rptr.3d 148] [on demurrer, trial court denied request for judicial notice for lack of foundation].) But the trial court granted Hervey's own request to judicially notice Mercury's response to a request for production of documents, which response included the specimen policy and the endorsement. Although Hervey complains that she should be able to obtain extrinsic evidence and amend the complaint and that the trial court should not have decided the meaning of the policy by taking judicial notice of it, she has not specifically challenged on appeal the trial court ruling granting her request for judicial notice.[1] We therefore consider the allegations of the complaint together with the specimen policy and endorsement attached to Hervey's response to Mercury's request for production.

### D. Parol Evidence

Although Hervey did not attach the insurance policy to her complaint, she alleged the existence of the automobile liability policy and that Mercury breached the policy by offsetting from the amount of uninsured motorist payments due the amount of medical expenses paid. Hervey, however, did not plead parol evidence to support her interpretation of the policy. Instead, she relied on the medical expense coverage endorsement and, particularly, the language in that endorsement, "NO EXCESS, NO REIMBURSEMENT."

On appeal, Hervey contends that she should be given the opportunity to amend her complaint to plead ambiguity of the policy and to obtain and introduce extrinsic evidence to support her interpretation of the policy—such as advertising copy, marketing brochures, and deposition testimony of insurance company executives and employees. But had Hervey actually relied upon such material in purchasing her automobile coverage from Mercury, she

---

[1] *Hervey* complains on appeal that in her request for judicial notice, the endorsement was in the front of the policy, while in Mercury's request for judicial notice, the endorsement followed the policy. This distinction does not appear to be significant.

would either have alleged that fact or asserted she could amend to plead such reliance. She has done neither, and she does not suggest how she would or could amend her complaint.

The policy, although not attached to, or otherwise incorporated in, the complaint, was judicially noticed by the trial court. As noted, Hervey alleged in conclusory fashion that Mercury breached the policy by offsetting the medical expenses paid against the uninsured motorist obligation. We shall assume that allegation satisfies the requirement that she must allege in the complaint the meaning she ascribes to that policy (*Hayter Trucking, Inc. v. Shell Western E&P, Inc., supra,* 18 Cal.App.4th at p. 18) and determine if the policy is reasonably susceptible of that meaning and whether the offset or reimbursement term she challenges is enforceable.

### E. *Interpretation of the Policy*

Hervey contends that the "NO REIMBURSEMENT" in large print on the medical expense endorsement, along with the checked box for "No Reimbursement" next to the medical expense coverage on the declaration page, conveyed that Mercury would not seek reimbursement or offsets of medical expense payments as a result of payments from any source. She adds that the retention of the right of reimbursement for uninsured motorist obligations was buried in the policy so that it was not "conspicuous," "plain and clear" as required by *Haynes v. Farmers Ins. Exchange* (2004) 32 Cal.4th 1198, 1211 [13 Cal.Rptr.3d 68, 89 P.3d 381]. Hervey also asserts that condition 3 of part II, which was deleted, arguably allowed Mercury to obtain reimbursement from any source, whether from an insured third party driver or from the insurer as a result of the act of the uninsured third party driver, and thus its deletion at least creates an ambiguity in the policy so that she should be given the opportunity to introduce parol evidence.

### 1. *Policy Not Ambiguous*

The medical expense endorsement upon which Hervey relies provides that "all other terms . . . of this policy remain unchanged" and contains one operative term: the deletion of two provisions in part II of the policy that provide, in part, that if the insured recovers "against any party that [the insured] claims is responsible for bodily injury to the person for which payment under medical expense coverage has been made," Mercury is entitled to reimbursement of the amount of such recovery. Thus, as a result of this deletion, with respect to medical payments made by Mercury, there is to be no reimbursement from the insured to Mercury as a result of amounts paid to the insured by a third party responsible for the accident. The medical expense endorsement, however, does not purport to delete any provision of

part IV dealing with uninsured motorists and therefore leaves untouched the reduction of uninsured motorist coverage to be paid by Mercury by the amount paid or to be paid under the automobile medical payment insurance.[2] The reference in the deleted provision in part II for reimbursement and offset of medical expenses to "any" settlement or judgment resulting from the exercise of recovery by the insured "against any party that [the insured]" claims is responsible for bodily injury means, in context, a recovery against the third party tortfeasor—not against the insurer. The insurer's separate obligations for damages caused by uninsured motorists are specifically covered under part IV dealing with such motorists. Thus, the operative terms of the policy are not ambiguous.

Neither the heading of the endorsement nor the declaration gives rise to any ambiguity. The heading "MEDICAL EXPENSE—NO EXCESS, NO REIMBURSEMENT" accurately describes what the medical expense endorsement concerns, which is the deletion of the provision for reimbursement of medical payments from a recovery the insured obtains from a third party. That heading is not an operative term or provision itself. (*Coit v. Jefferson Standard Life Ins. Co.* (1946) 28 Cal.2d 1, 11 [168 P.2d 163] [caption in an insurance rider not the operative provision]; *Westrec Marina Management, Inc. v. Arrowood Indemnity Co.* (2008) 163 Cal.App.4th 1387, 1395 [78 Cal.Rptr.3d 264] ["[a]lthough the heading . . . does not describe the effect of the provision . . . the absence of a fully descriptive heading does not restrict the plain meaning of the provision"].) And the declaration does not purport to set forth or define the operative terms. Thus, any ambiguity in the declaration "is resolved by" the terms of the policy. (*United Services Automobile Assn. v. Baggett, supra,* 209 Cal.App.3d at p. 1397.) Finally, to the extent Hervey's understanding of the policy is contrary to its explicit language, her subjective intent is not relevant. (See *Atlas Assurance Co. v. McCombs Corp.* (1983) 146 Cal.App.3d 135, 144 [194 Cal.Rptr. 66]; *General Reinsurance Corp. v. St. Jude Hospital* (2003) 107 Cal.App.4th 1097, 1108 [132 Cal.Rptr.2d 540]; Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra,* ¶ 4:13, p. 4-4 (rev. # 1, 2009).) Accordingly, Hervey's effort to construct an ambiguity is to no avail. The medical expense endorsement does not affect Mercury's rights to offset or be reimbursed in connection with uninsured motorist coverage.

---

[2] The language of the uninsured motorist provision specifically is permitted by Insurance Code section 11580.2, subdivision (e), which states, "The policy or endorsement added thereto may provide that if the insured has valid and collectible automobile medical payment insurance available to him or her, the damages that the insured shall be entitled to recover from the owner or operator of an uninsured motor vehicle shall be reduced for purposes of uninsured motorist coverage by the amounts paid or due to be paid under the automobile medical payment insurance."

### 2. *Policy Provisions Conspicuous, Plain, and Clear*

■ Hervey asserts that the use of the phrase in large letters, "NO EXCESS, NO REIMBURSEMENT" in connection with medical expense coverage, when coupled with the placement and smaller print of the uninsured motorist offset or reimbursement requirement, renders the right to offset or reimbursement under that uninsured motorist provision insufficiently clear and conspicuous, so as to be unenforceable. Hervey cites *Haynes v. Farmers Ins. Exchange, supra*, 32 Cal.4th 1198. The court in that case said, "Coverage may be limited by a valid endorsement . . . . But to be enforceable, any provision that takes away or limits coverage reasonably expected by an insured must be 'conspicuous, plain and clear.' " (*Id.* at p. 1204, citation omitted.) The court explained that in determining conspicuousness, a court must look to "how a coverage-limiting provision actually has been positioned and printed within the policy at issue." (*Id.* at p. 1209.) Thus, "[t]o be enforceable, a policy provision limiting coverage otherwise reasonably expected under the policy must be so drafted that a reasonable purchaser of insurance would have both noticed it and understood it." (Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra*, ¶ 4:490, p. 4-68 (rev. # 1, 2009) [citing *Ponder v. Blue Cross of Southern California* (1983) 145 Cal.App.3d 709, 719 [193 Cal.Rptr. 632].)

In *Haynes v. Farmers Ins. Exchange, supra*, 32 Cal.4th 1198 and certain of the cases it cited—*Jauregui v. Mid-Century Ins. Co.* (1991) 1 Cal.App.4th 1544 [3 Cal.Rptr.2d 21] and *Ponder v. Blue Cross of Southern California, supra*, 145 Cal.App.3d 709—endorsements or other limitations that were deemed inconspicuous essentially reduced coverage and were surrounded by unrelated language or were otherwise buried in the policy. In this case, the medical expense endorsement adds coverage rather than reduces it, and clearly specifies that it is deleting only provisions from part II that deal with third party recoveries. There is no suggestion in the medical expense endorsement itself that it concerns, much less expands, uninsured motorist coverage. Moreover, the medical expense endorsement specifically says that, except for the deletions, "all other terms and conditions of this policy remain unchanged," including presumably the terms and conditions of the uninsured motorist coverage. And, as noted, the heading "MEDICAL EXPENSE—NO EXCESS, NO REIMBURSEMENT" is just a description of what the document concerns and not a term or provision itself. The smaller print to which Hervey refers contains the actual terms of the medical expense endorsement.

Notwithstanding the medical expense endorsement, the uninsured motorist provisions remained unchanged. The reimbursement provision relating to uninsured motorist coverage was in the same place in the policy before and

after the added medical expense endorsement. The medical expense endorsement's only operative provision deletes portions of part II—"EXPENSES FOR MEDICAL SERVICES." Mercury's reduction of uninsured motorist benefits under the policy are in the section exclusively dealing with uninsured motorist coverage—part IV. The uninsured motorist coverage conditions are in the same size and intensity typeface as the other operative terms of the policy and are contained within a section of uninsured motorist coverage that has a large, boldface heading—"PART IV—CONDITIONS." This is the same boldface type as the other headings in the policy.

As said in *Zubia v. Farmers Ins. Exchange* (1993) 14 Cal.App.4th 790, 796 [18 Cal.Rptr.2d 65] (*Zubia*), "This is not a case in which an exclusionary clause is 'hidden in fine print in a policy section bearing no clear relationship to the insuring clause. [Citation.]' [Citation.] Rather, the reimbursement provision is prominently featured under the descriptive heading 'Part V—[(here, pt. IV)] CONDITIONS,' which is printed in the same boldfaced type as the other headings of the Policy." (See *National Ins. Underwriters v. Carter* (1976) 17 Cal.3d 380, 384 [131 Cal.Rptr. 42, 551 P.2d 362] [provision under a prominent "EXCLUSIONS" heading and in same print size and intensity as rest of policy is conspicuous]; see also *Cal-Farm Ins. Co. v. TAC Exterminators, Inc.* (1985) 172 Cal.App.3d 564, 578 [218 Cal.Rptr. 407] [exclusion clauses "do not fail merely because of the density of verbiage"].) Thus, the uninsured motorist offset and reimbursement provision "is conspicuous as a matter of law." (*Zubia, supra,* 14 Cal.App.4th at p. 796.) And, as we have discussed, that provision is plain and clear.

This is not a situation in which the provision would not reasonably be expected. (See Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra,* ¶ 4:546, p. 4-76 (rev. # 1, 2009).) An insured would not normally expect that he or she would receive from the insurer two payments covering the same injury. Under the medical expense provisions of the policy, the insured here could receive from a third party a payment for his or her injury without having to credit or pay back the insurer for medical payments for the same injury. But it would seem anomalous to expect the insurer itself to pay twice for the same injury, once under the medical expense coverage of the policy and again under the uninsured motorist coverage of the policy. We conclude that the condition is conspicuous, plain, and clear and thus enforceable.

## F. *Conclusion*

 The policy is not ambiguous on its face. Moreover, as a matter of law, the language of the policy is not reasonably susceptible to Hervey's interpretation. The offset and reimbursement provision in the uninsured

motorist section of the policy is sufficiently conspicuous, plain, and clear to be enforceable. Thus, Hervey has failed to state facts sufficient to constitute a cause of action.

Hervey seeks to amend the complaint. But, as noted, she has not suggested how she would amend the complaint. More importantly, because the policy is not reasonably susceptible to the meaning Hervey attributes to it, the parol evidence Hervey seeks to obtain and allege would be inadmissible to alter or vary the terms of the policy. Thus, the trial court did not abuse its discretion in denying Hervey's request for leave to amend the complaint.

## DISPOSITION

The judgment is affirmed. Mercury shall recover its costs on appeal.

Turner, P. J., and Armstrong, J., concurred.

A petition for a rehearing was denied July 27, 2010, and appellant's petition for review by the Supreme Court was denied September 1, 2010, S184823.