Filed 7/15/13  Lee v. Clark Reliance Co. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARY LEE et al., | B241656 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. JCCP4674) |
| v. | |
| CLARK RELIANCE CORPORATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Emilie H. Elias, Judge.  Affirmed.

Weitz & Luxenberg, Cindy Saxey, Josiah Parker and Benno Ashrafi for Plaintiffs and Appellants.

Walsworth Franklin Bevins & McCall, Thomas G. Scully, Karen M. Johnson and Michelle A. Burns for Defendant and Respondent.

_____

INTRODUCTION

Plaintiff Mary Lee appeals from the judgment against her entered after the trial court granted the motion for summary judgment brought by defendant Clark Reliance Corporation (Clark), a successor-in-interest to Jerguson Gage & Valve Company (Jerguson). In her lawsuit, plaintiff alleged that her husband, decedent Richard Lee, was exposed to asbestos while serving on the USS Eversole where he removed and replaced gaskets on Jerguson boiler sight-glass gauges.[1] Clark's motion for summary judgment demonstrated that plaintiff was unable to establish the essential element of causation because she had no evidence that Lee was exposed to an asbestos-containing gasket manufactured or supplied by Jerguson. We hold there is no dispute of material fact with the result the trial court properly granted summary judgment. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

As a seaman, Lee boarded the USS Eversole, a destroyer, around April 1953 and served there for three and a half years. Lee initially served as a fireman apprentice, then as a fireman, and was finally promoted to Boiler Tender Third Class. Lee associates Jerguson with boiler sight glass gauges during his service in the Navy aboard the USS Eversole.

Boiler sight glasses are gauges that are hung on the face of a boiler and used to measure the water level inside the boiler. The gauge consists of heavy, one and a half to two-inch thick pieces of glass in a very heavy steel frame. Boiler sight glasses were incorporated onto the boiler by the boiler manufacturer and provided to the Navy as part of the original boiler installation. Sight glass gauges are passive measuring devices which do not create any heat that would cause the gaskets within them to degrade. Thus, the function of the sight glass itself is not responsible for and does not contribute to any wear on the gasket; rather it is the heat generated by the boiler that contributes to the

---

[1] The parties have used the word "gage" and "gauge" interchangeably. For purposes of this opinion, we will use the word "gauge."

eventual degradation, if any, of a gasket. The sight glass will eventually cloud or begin to crack, requiring the replacement of the glass, mica shield, and gaskets. On average replacement is made three to four times each year.

The USS Eversole had four boilers. Each boiler had one to three sight glasses. The only time Lee worked with or around a Jerguson boiler sight glass was while serving aboard the USS Eversole. He removed and replaced the sight glass gaskets until he was promoted to Boiler Tender Third Class in late 1955.

Lee was diagnosed with mesothelioma in 2011. He and plaintiff sued numerous companies including Clark, individually and as successor in interest to Jerguson, seeking to recover damages for his exposure to asbestos.[2] The complaint alleged causes of action for negligence, breach of express and implied warranties, strict liability, and loss of consortium. As to Clark, plaintiff and Lee claimed that Lee was exposed to asbestos when he removed and replaced gaskets on Jerguson boiler sight glasses while serving aboard the USS Eversole. Clark's answer generally and specifically denied all of the allegations in the complaint.

Clark moved for summary judgment on the ground, among others, that there was no dispute of fact that Lee was not exposed to an asbestos-containing product manufactured or supplied by Jerguson, with the result that plaintiff was unable to establish, as a matter of law, a causal connection between Lee's injuries and any Jerguson product or equipment.

Clark asserted the following essential facts. First, Lee never opened a Jerguson boiler gauge glass to reveal the internal gasket, and never saw others do so. Clark relied on Lee's deposition testimony that, "Q. When you removed the gauge from the boiler to clean it, did you open the gauge itself? [¶] A. No. [¶] Q. Did you see anybody else open a Jerguson boiler gauge glass while you were on the Eversole? [¶] A. No." "Q. So

---

**2**      Other than Clark as successor in interest to Jerguson, none of the other defendants is a party to this appeal.

you were just wiping off the exterior of the gauge; is that right? [¶] A. That would be correct."

Second, even if Lee did open a Jerguson gauge glass to reveal the gasket within, it was undisputed that whatever internal gasket Lee came in contact with was not a Jerguson product. The reason was that by the time Lee boarded the USS Eversole in 1953, the ship's boilers had been in service for seven years and all of the original, factory-installed gaskets inside the boiler gauge glasses had already been replaced during normal maintenance with non-Jerguson gaskets. Plaintiff's own expert, Captain Frank J. Burger, confirmed that on the average, gauge glasses were replaced three to four times a year. Burger explained that that boiler sight glass gaskets were a consumable item that the United States Navy purchased in bulk from the least expensive source. Vendors of consumable products used by the Navy were either the makers or distributors of the consumable products. It would have been contrary to the Navy's established doctrine, procedures, and practice to purchase consumable components from an equipment manufacturer such as Jerguson, as this would increase the cost of the replacement parts. Thus, by 1953, when Lee boarded the USS Eversole, all of the original internal gaskets had been replaced by non-Jerguson products.

Third, Clark asserted that the Navy provided the specifications for the design and manufacture of products for naval use, from which specifications the manufacturers had no discretion to deviate. Clark supported this fact with the declaration of Clark's expert, Lieutenant Clancy B. Cornwall.

Plaintiff's opposition to the summary judgment motion was premised on a uniform set of evidence that she believed disputed many of Clark's material facts. Based on this evidence she argued that Clark did not demonstrate the absence of a triable issue of material fact and there was a "triable controversy" about whether Lee was exposed to asbestos because the Jerguson gauge glasses contained, and were designed and intended to operate with, asbestos materials. Additionally, plaintiff asserted that Lee's exposure to asbestos from Jerguson gauge glasses substantially contributed to his risk of contracting

4

mesothelioma. Finally, plaintiff argued that the trial court should deny Clark's motion because Clark had prevented necessary discovery.

In its reply, Clark explained it had demonstrated that Lee was not *exposed* to asbestos from any Jerguson sight glass because he never disassembled a gauge to reach the *internal asbestos* gasket. Instead, Lee removed the *external metal* gaskets to clean the gauge. Also, the original Jerguson-supplied internal gasket and one spare would have been replaced long before Lee boarded the USS Eversole, and Jerguson did not supply replacement gaskets to the United States Navy. In support of its reply, Clark submitted the deposition of its industrial hygiene expert, Sheldon Rabinovitz, M.D., who testified that "the only possible asbestos-containing component supplied or in the sight gauge was a small asbestos-containing gasket securing the sight glass to the base, and that Mr. Lee said he never opened the sight glass, thus, he would have had no contact with the one asbestos-containing gasket that would . . . be located at the base of the sight glass. . . . [T]he gasket used to attach the sight glass gauge to the attachment was a metal [i.e., non-asbestos] gasket and, thus, he would not have been exposed . . . [to] any asbestos-containing component supplied by Jerguson." Therefore, Clark argued, Jerguson was entitled to summary judgment as plaintiff could not prove Lee's mesothelioma was caused by an asbestos-containing product supplied by Jerguson.

The trial court granted Clark's summary judgment motion. Judgment was entered against plaintiff and in favor of Clark, solely as it relates to allegations pertaining to Jerguson. Plaintiff's timely appeal ensued.

## CONTENTIONS

Plaintiff contends the trial court erred in granting summary judgment because (1) Clark prevented necessary discovery, and (2) plaintiff demonstrated a triable factual issue about causation.

## DISCUSSION

### 1. *Standard of review*

A defendant moving for summary judgment carries the initial burden to show that "one or more elements of the [plaintiff's] cause of action . . . cannot be established . . . ."

5

(Code Civ. Proc., § 437c, subd. (p)(2).)  This burden is initially one of production, i.e., the moving defendant must make a prima facie showing of the nonexistence of a triable issue of material fact.  (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850.)  If the defendant carries its burden, the burden shifts to the plaintiff to make a prima facie showing that "a triable issue of one or more material facts exists as to that cause of action . . . ."  (Code Civ. Proc., § 437c, subd. (p)(2).)  To meet that shifted burden, the plaintiff "shall set forth the specific facts."  (*Ibid*.)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Aguilar*, *supra*, at p. 850.)  In ruling on motions for summary judgment, trial courts "shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence[.]"  (Code Civ. Proc., § 437c, subd. (c); see also *California Traditions, Inc. v. Claremont Liability Ins. Co*. (2011) 197 Cal.App.4th 410, 416.)

"On appeal from an order granting summary judgment, we independently examine the record to determine whether there are any triable issues of material fact.  [Citation.] In performing our review, we view the evidence in the light most favorable to plaintiffs as the losing parties, resolving any evidentiary doubts or ambiguities in their favor. [Citation.]"  (*McGonnell v. Kaiser Gypsum Co*. (2002) 98 Cal.App.4th 1098, 1102.)

2. *The trial court did not err in ruling on the summary judgment motion even though Clark did not produce a person most knowledgeable until just before the hearing*.

Preliminarily, we address plaintiff's contention that the summary judgment motion should have been denied because Clark prevented necessary discovery.  Plaintiff argues Clark unjustifiably refused to produce a person most qualified to testify on behalf of Clark, despite a motion to compel and a court order, until two days before the hearing on Clark's summary judgment motion.  Plaintiff argues, pursuant to Code of Civil Procedure section 437c, subdivision (h), that the trial court should have denied the motion or continued the hearing because of this discovery abuse.

6

Code of Civil Procedure section 437c, subdivision (h) provides in part, "If it appears from the affidavits submitted in opposition to a motion for summary judgment . . . that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just."

"Subdivision (h) was added to section 437c ' "[t]o mitigate summary judgment's harshness," . . . [citations]' [citation] 'for an opposing party who has not had an opportunity to marshal the evidence[.]' [Citation.] The statute mandates a continuance of a summary judgment hearing upon a good faith showing by affidavit that additional time is needed to obtain facts essential to justify opposition to the motion. [Citations.] Continuance of a summary judgment hearing is not mandatory, however, when no affidavit is submitted or when the submitted affidavit fails to make the necessary showing under section 437c, subdivision (h)." (*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 253-254.)

Plaintiff never requested a continuance or permission to file a supplemental brief, despite the court's invitation.[3] (Code Civ. Proc., § 437c, subd. (h).) In opposition to the summary judgment motion, plaintiff premised her argument that the court should deny the motion outright on the failure of Clark to produce the person most knowledgeable for deposition. Clark did stall the deposition of its person most knowledgeable about Jerguson products. Ultimately, Clark informed plaintiff that it had no such person and no documents pre-dating 1986 because of Clark's document retention policies. However, as plaintiff acknowledged to the trial court, Clark *did produce a witness who plaintiff deposed*, albeit just before the hearing. At the hearing on Clark's summary judgment motion, plaintiff's attorney admitted that the deposition provided no useful information because "[t]he testimony was we don't know anything." At no time did plaintiff submit

---

[3] The court stated to plaintiff's counsel: "I would assume you'd be filing a supplemental or asking me for a supplemental. [¶] . . . You have four lawyers from your firm here. If there was something, I bet somebody would be jumping up and telling me."

7

an affidavit to the trial court or otherwise made the necessary showing under Code of Civil Procedure section 437c, subdivision (h) that additional time was needed to obtain essential facts. The trial court properly declined to deny the summary judgment motion on that basis.

      3. *Plaintiff has not demonstrated a dispute of material fact.*

As explained, plaintiff repeated the same evidence in her attempt to dispute numerous disparate facts proffered by Clark. Plaintiff first attempted to dispute Lee's own testimony that he neither opened the boiler sight gauge glass itself nor saw anyone else do so. Toward this end, she cited Lee's testimony that he cleaned and repaired boiler gauge glasses and remembered the manufacturer for those glasses was Jerguson because the name was on the gauges. Lee explained, to ensure the gauges were in good operating condition, he removed the gaskets *between* the gauges and *whatever the gauges were connected to*, cleaned them with metal scrapers, and replaced them "many times." He believed the external gaskets contained asbestos "[b]ased on the fact that heat was involved." The gasket connecting the gauge to the boiler would come out in pieces and cleaning the gasket would "make it dusty."

This testimony does not dispute that Lee *never opened a Jerguson sight glass gauge and never saw anyone else do so*. The portions of Lee's testimony cited by plaintiff show, although Lee came in contact with metal gaskets *outside* the sight glass that connected the gauge to the boiler, he did not dispute that he never came in contact with the asbestos-containing gasket *inside* the Jerguson gauge itself. The only testimony plaintiff proffered to show that the gasket Lee worked with contained asbestos was Lee's own testimony that "heat was involved." The trial court properly ruled there was no foundation for this statement. (Evid. Code, § 702, subd. (a).)[4] Accordingly, plaintiff did

---

[4]    Evidence Code section 702, subdivision (a) provides that the testimony of a non-expert "witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter." On appeal, plaintiff argues this ruling was erroneous. However, plaintiff cites no authority for this proposition. We conclude she has forfeited the contention. (*Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1114.)

not dispute that Lee never came in contact with asbestos-containing gaskets or packing *inside* a Jerguson sight glass gauge.

Plaintiff attempted to dispute Clark's second asserted fact that whatever gasket Lee came in contact with was not a Jerguson product. Plaintiff cited Lee's testimony that to the best of his knowledge, replacement gaskets came in a sealed box with Jerguson's name on it. Lee simply assumed, as the name "Jerguson" was on the box, that Jerguson was the manufacturer of the gaskets inside the box. However, Lee also acknowledged "[t]here's really no way of knowing" the manufacturer or supplier of the old gaskets he removed; he did not know from whom the Navy purchased new gaskets; and he saw no purchase order for the new gaskets. This evidence does not demonstrate that Lee came in contact with an asbestos-containing gasket made by Jerguson.

Plaintiff also cited Lieutenant Cornwall's testimony. However, Cornwall's statements emphatically support Clark's assertion that Jerguson did not manufacture the gaskets with which Lee came into contact in the 1950s. Lieutenant Cornwall testified, based on the specifications, that when the USS Eversole was built in the 1940s, Jerguson was "required . . . to supply *one set* of replacement parts per gauge glass." (Italics added.) Cornwall later corrected plaintiff's counsel's paraphrasing by reiterating that Jerguson "provided *the one set* in 1945 or whenever the ship was commissioned they provided *one set then*. *As of then that was the end of their supply of spares to the Navy*." (Italics added.) Cornwall next testified that Jerguson never sold replacement parts for any part of the sight glass because Jerguson was not on the Navy's Qualified Products List (QPL) for gauge glasses from 1952 to 1962. Indeed, plaintiff's own expert Captain Burger confirmed this fact. Captain Burger also did not believe Jerguson was in the business of manufacturing gaskets; it only manufactured boiler gauge glasses that required gaskets. Thus, plaintiff did not dispute that the Navy had replaced all of the original gaskets inside the Jerguson sight glasses with non-Jerguson gaskets, long before Lee boarded the Eversole in 1953.

As part of her packet of evidence submitted to demonstrate a material factual dispute, plaintiff included a copy of Jerguson Gage & Valve Co. Drawing No. E-152.

9

Plaintiff claimed E-152 was "prepared by Jerguson for the boiler gauge glasses it supplied to the US Navy for installation aboard various naval ships, *including the USS Eversole*." (Italics added.) Captain Burger relied on Drawing E-152 to conclude that Jerguson gauge glasses contained asbestos packing and gaskets. Although the Navy purchased component parts, such as gaskets in bulk, Burger testified the replacement gaskets would have complied with Jerguson's drawings. Any time the ship ordered a sight glass gasket, it would have purchased one constructed according to Jerguson's drawing, Burger testified.

Clark filed objections to this drawing citing a lack of foundation and authentication, hearsay, and lack of relevance. Although the trial court did not rule on the objections, they are preserved on appeal. (*Reid v. Google, Inc*. (2010) 50 Cal.4th 512, 534.) We conclude that Drawing E-152 was inadmissible as plaintiff failed to authenticate it. (Evid. Code, § 1401, subd. (a).) Plaintiff's attorney did not establish where the drawing came from or how it is in any way connected to the sight glasses installed on the boilers of the USS Eversole. Nor did Captain Burger, who derived his asbestos-related conclusions from Drawing E-152, provide any foundation or authentication. He testified nothing more than that the drawing was handed to him. More important, however, the drawing is irrelevant because, although it calls for asbestos packing *inside* the sight glass gauge, a point Clark does not dispute, Lee clearly testified *he never opened a Jerguson sight glass gauge and never saw anyone else open one*. The drawing is also irrelevant because it does not dispute Lieutenant Cornwall's testimony that any product manufactured for the Navy was done in accordance with the Navy's own mandatory specifications, and no replacement component parts were manufactured or supplied by Jerguson. Therefore, plaintiffs have not disputed that *Lee was never exposed to asbestos from a Jerguson product*.

4. *As a matter of law, Clark is not liable to plaintiff.*

A product manufacturer may not be held liable in strict liability or negligence for injuries caused by another manufacturer's adjacent product or replacement part used in conjunction with the defendants' product. (*O'Neil v. Crane Co*. (2012) 53 Cal.4th 335,

10

342-343, 346 (*O'Neil*); accord, *Taylor v. Elliott Turbomachinery Co. Inc*. (2009) 171 Cal.App.4th 564 (*Taylor*).) Taylor was a seaman who served aboard an aircraft carrier in the 1960s. During his service, Taylor removed and replaced asbestos-containing internal gaskets, packing, and insulation from equipment in the carrier's propulsion system that the defendant manufacturers had supplied to the Navy when the ship was built in the 1940s. (*Taylor*, *supra*, at pp. 571-572.) Asbestos dust was released in the air and inhaled when Taylor removed these materials. (*Id*. at p. 572.) It was undisputed that while some of the defendants' equipment included asbestos-containing parts when delivered to the Navy in the 1940s, all of those original parts had been removed by the time Taylor boarded the carrier in the 1960s. (*Ibid*.) Taylor was diagnosed with mesothelioma resulting from his exposure to asbestos and he and his wife sued the manufacturers of the equipment on theories of failure to warn under both strict products liability and negligence. (*Id*. at p. 572, fn. 4.) The appellate court affirmed the summary judgment entered in favor of the manufacturers. The *Taylor* court held that the equipment manufacturers could not be held liable for failing to warn about the dangers of asbestos exposure arising from products manufactured and supplied by third parties. (*Id*. at p. 575.)

Among other bases for its conclusion, the *Taylor* court held the component parts doctrine shielded the manufacturers from liability. (*Taylor*, *supra*, 171 Cal.App.4th at p. 585.) Under that doctrine, a manufacturer of a product component is not liable for injuries caused by the finished product into which the component is incorporated unless the component itself was defective at the time it left the manufacturer. (*Id*. at p. 584.) Liability of a component part manufacturer is "dependent on two factors: (1) whether the component itself was defective when it left the component manufacturer's factory, and (2) whether these defects *caused injury*. [Citations.]" (*Id*. at p. 585, italics added.) The second factor was absent in *Taylor* "because there [was] no claim that respondents' equipment released the asbestos that caused Mr. Taylor's injuries." (*Ibid*.) Rather, it was undisputed that Taylor's injuries were caused by his exposure to asbestos fibers released from gaskets, packing, and insulation manufactured *by other companies*, and installed

11

long after the manufacturers' products were supplied to the Navy. It was also undisputed that the manufacturers provided components in accordance with Navy specifications. The defendant manufacturers neither made nor supplied the asbestos-containing materials that caused the injuries. (*Id*. at p. 585 & fn. 10.) On these facts, the *Taylor* court held the defendant manufacturers were not liable as a matter of law. (*Id*. at p. 585.)

The Supreme Court relied on *Taylor* for its recent holding in *O'Neil* that a manufacturer may not be held liable in strict liability or negligence for injuries caused by another manufacturer's adjacent product or replacement part used in conjunction with the defendants' product. (*O'Neil*, *supra*, 53 Cal.4th at p. 346.) The defendants in *O'Neil* made valves and pumps according to Navy specifications for use in the steam propulsion systems of warships. The valves and pumps were used with asbestos-containing external insulation and internal gaskets and packing, all of which products were made by third parties and added to the pumps and valves after sale to the Navy. (*Id*. at pp. 344-345.) O'Neil was also a sailor who served aboard a Navy aircraft carrier in the mid-1960s and was exposed to airborne asbestos while supervising enlisted men who repaired equipment in the ship's engine and boiler rooms. (*Id*. at p. 345.) There was no evidence that any of the asbestos-containing dust came from the defendants' products. (*Ibid.*) The defendants did not manufacture or sell the external insulation or gaskets removed during the repair work, and while the valves and pumps contained internal asbestos-containing gaskets and packing when the ship was built, those original components had long been replaced with other manufacturers' products by the time O'Neil boarded the ship. (*Ibid.*)

The *O'Neil* court held that the defendants were not strictly liable for the plaintiff's injuries because "(a) any design defect in *defendants' products* was not a *legal cause* of injury to O'Neil, and (b) defendants had no duty to warn of risks arising from *other manufacturers'* products." (*O'Neil, supra*, 53 Cal.4th at p. 348, second italics added.) The court reasoned that even if inclusion of asbestos made a product defective, "no defect inherent in defendants' pump and valve products *caused* O'Neil's disease." (*Id*. at p. 350, italics added.) The *O'Neil* court explained that although a defendant manufacturer may be liable for its own defective, finished product, "[w]e have never held

12

that strict liability extends to harm from entirely distinct products that the consumer can be expected to use with, or in, [a] defendant's nondefective product." (*Id.* at p. 348.) The dust to which O'Neil was exposed came from insulation, gaskets, and packing made by others, and "[n]othing about defendants' pumps and valves *caused or contributed* to the release of this dust." (*Id.* at p. 361, italics added.)

Applying the principles of *Taylor* and *O'Neil* to this case, Clark's summary judgment motion showed indisputably that Lee never came in contact with asbestos-containing dust released from a Jerguson sight glass gauge and so causation is absent. The only asbestos gasket or packing associated with a Jerguson product was located *inside* the gauge and Lee never opened a sight glass gauge and never saw anyone else do it in the three years he was aboard the USS Eversole. Lee did remove, clean, and replace the *external* gaskets connecting the sight glass gauge to the boiler, but those gaskets were metal and did not contain asbestos. Furthermore, it was undisputed that any asbestos-containing component-part associated with the Jerguson sight glass gauges had been replaced by parts made by other companies long before Lee boarded the USS Eversole. Plaintiff acknowledged that Jerguson was not a manufacturer of asbestos products, and did not dispute that Jerguson was not on the Navy's Qualified Products List and was not a supplier of replacement parts to the Navy. Finally, all of the replacement parts were manufactured according to strict Navy specifications. Pursuant to *O'Neil* and *Taylor,* Clark, as Jerguson's successor in interest, may not be held liable for harm caused by another manufacturer's product. (*O'Neil*, *supra*, 53 Cal.4th at pp. 342-343, 346; *Taylor*, *supra*, 171 Cal.App.4th at p. 585.)

On appeal, plaintiff cites *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, and *Lineaweaver v. Plant Insulation Co.* (1995) 31 Cal.App.4th 1409, and points to evidence from her medical expert Barry R. Horn, M.D., that Lee was exposed to respirable asbestos fibers in a dose above background levels. She argues that she has raised a triable issue of fact that Lee was exposed to asbestos, and so she has carried her burden as to the element of causation. In asbestos litigation, the plaintiff must demonstrate both the threshold *exposure* to the defendant's asbestos-containing product

13

(cause-in-fact) and the biological process from the exposure which result in disease (substantial factor). (*Rutherford*, *supra*, at p. 982; *Lineaweaver, supra,* at p. 1416; accord, *McGonnell v. Kaiser Gypsum Co., supra,* 98 Cal.App.4th at p. 1103.) Although Lee may have been exposed to asbestos fibers, as analyzed, plaintiff is unable to demonstrate cause-in-fact, namely a triable factual dispute that those fibers came from a Jerguson asbestos-containing product.

Plaintiff next contends on appeal that the trial court should have denied the summary judgment motion because Clark failed to establish that Lee *was not* exposed to an asbestos containing component Jerguson supplied for use in its sight glass gauges. Plaintiff insists, where the trial court was confused about which gaskets contained asbestos and which gaskets did not, that it should have denied summary judgment. However, we review summary judgment motions de novo. (*McGonnell v. Kaiser Gypsum Co., supra,* 98 Cal.App.4th at p. 1102.) In our view, there is no dispute of fact that Lee was not exposed to asbestos from a Jerguson product. Rabinovitz's deposition testimony, included with Clark's reply to plaintiff's opposition to the summary judgment motion, clarified that because Lee never opened the sight gauge glass, he never came in contact with the one asbestos-containing gasket supplied by Jerguson in the 1940s. Lee testified he took the gauge glass off to clean and replace it, with the result, as Rabinovitz explained, Lee would have only worked with the external *metal* gasket. Plaintiff never objected in the trial court to the introduction of this late-filed, new evidence in Clark's reply. Thus, she cannot be heard to challenge on appeal the trial court's consideration of that new evidence. (*Reid v. Google, Inc.*, *supra*, 50 Cal.4th at pp. 531-532.) Rabinovitz's testimony, combined with the undisputed evidence and all reasonable inferences deducible therefrom that by the time Lee boarded the USS Eversole all of the sight-glass component-parts had been long been replaced by products manufactured by third parties, demonstrated that Lee never came in contact with a Jerguson asbestos-containing gasket either on the interior or the exterior of the gauge.

14

DISPOSITION

The judgment is affirmed.  Each party to bear its own costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**




ALDRICH, J.


We concur:




KLEIN, P. J.




CROSKEY, J.




15